UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDIA LINDA MONTOYA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:12-cv-02483 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born May 29, 1963, applied for SSI benefits on January 7, 2008, alleging disability beginning September 1, 2006. Administrative Transcript ("AT") 54, 79. Plaintiff alleged she was unable to work due to back problems, depression, and auto accident injuries. AT

/////

/////

78. In a decision dated August 20, 2010, the ALJ determined that plaintiff was not disabled.[1] AT 15-22. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since January 7, 2008, the application date.
>
> 2. The claimant has the following severe impairments: neck and back pain.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

/////

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

>    4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c).
>
>    5.    The claimant is capable of performing past relevant work as a clerk, cashier, and meter reader.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
>    6.    The claimant has not been under a disability, as defined in the Social Security Act, since January 7, 2008, the date the application was filed.

AT 27-22.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly classified plaintiff's past work as "past relevant work"; (2) the ALJ erred in failing to consider or properly analyze plaintiff's limitations caused by obesity, moderate obstructive sleep apnea, and moderate difficulties in concentration, persistence, and pace; and, (3) the ALJ improperly rejected the opinions of treating physician Dr. Colleen Aitken and state agency medical consultant Dr. James V. Glaser.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

/////

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

   A. Past Relevant Work

Plaintiff first contends that the ALJ committed error in finding that she could perform her past relevant work as a clerk, cashier, and meter reader because plaintiff's past work was not "relevant" within the meaning of the regulations. Plaintiff bears the burden of showing she does not have the residual functional capacity ("RFC") to engage in "past relevant work." 20 C.F.R. §§ 416.960, 416.965. A job qualifies as past relevant work only if it involved substantial gainful activity. Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity. Monthly earnings averaging less than [the monthly amount set forth in 20 C.F.R. § 416.974(b) for the relevant time period] generally show that a claimant has not engaged in substantial gainful activity. . . . With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity." Id.

Plaintiff makes various arguments concerning the ALJ's finding that she could perform her past relevant work. Most notably, however, is plaintiff's argument that her earnings during the relevant time period are below the substantial gainful activity amount. In fact, the record shows that plaintiff only earned $8,127 in 2005 and $8,931 in 2006. AT 77. In these years, the monthly substantial gainful activity amount under the regulations for a non-blind individual was $830 and $860, respectfully. Substantial Gainful Activity, Monthly substantial gainful activity

amounts by disability type, Social Security Administration (Dec. 2, 2013), http://ssa.gov/oact/cola/sga.html.  Plaintiff's average monthly earnings during 2005 and 2006 were below the corresponding monthly substantial gainful activity amounts.  Thus, the ALJ was required to point to substantial evidence in order to establish that plaintiff's past work involved substantial gainful activity.

Defendant notes that although plaintiff's earnings in her past work do not appear to be presumptively substantial, that does not necessarily mean that the work was not substantial gainful activity.  Consequently, defendant argues, this issue does not raise a reversible issue.  Defendant fails to set forth any argument concerning the ALJ's duty to point to substantial evidence that the claimant has engaged in substantial gainful activity.  The ALJ merely stated that he found plaintiff has past relevant work as a clerk, cashier, and meter reader "[a]fter reviewing the documentary record and hearing [plaintiff's] detailed explanation of her past relevant work."  AT 21.  Therefore, the ALJ's finding is not supported by substantial evidence.

In this case, however, the ALJ made an alternative finding at step five that, based on the grids, there would be work plaintiff could perform.  If there is no error in the alternative finding, the error in the ALJ's finding that plaintiff had past relevant work that she could perform would be harmless.  Thus, whether remand is necessary will be determined by the validity of the ALJ's alternative finding, which will be discussed in section C.2, infra.

B.  Limitations

Plaintiff argues that the ALJ failed to meaningfully analyze the limiting effects of her obesity, moderate obstructive sleep apnea, and moderate limitations in concentration, persistence, and pace on her ability to work.  Upon assessing plaintiff's limitations, the ALJ found that she complained of depression and sleep problems, that plaintiff's allegations are not credible, and that her obesity does not significantly impact her impairments or decrease her ability to function.  AT 18-20.  In reasoning that plaintiff's allegations were not credible, the ALJ cited to her activities of daily living: that she is able to prepare her own meals, do household chores without assistance, drive her car and shop independently, go to church, and play with her grandchildren.  AT 20.  In making his findings, the ALJ gave significant weight to the opinion of Dr. Fariba Vesali, which

was issued on May 28, 2010, after an independent examination and a review of plaintiff's records. AT 300. Dr. Vesali concluded that plaintiff could do medium exertional work with no nonexertional limitations. AT 20, 301. The ALJ also gave significant weight to the opinion of psychiatrist Dr. Manolito Castilla, in which it was found that plaintiff had no significant mental limitations. AT 20, 311.

### 1. Obesity

Obesity was eliminated from the Listing of Impairments (Listing 9.09) because the Social Security Administration determined that the criteria in the Obesity Listing did "not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." Social Security Ruling (SSR) 02-01p (2002). Obesity remains, however, a factor that may be considered at any step in the sequential evaluation. Id. "Obesity in combination with other impairments may or may not increase the severity or functional limitations of the other impairment." Id. Here, the ALJ assessed plaintiff's activities of daily living and then found that her obesity does not significantly impact her other impairments or decrease her ability to function. AT 20.

Plaintiff argues that this analysis was insufficient because the ALJ did not discuss her "morbid obesity" in detail, including her need for gastric bypass surgery on March 2, 2010. ECF No. 16-1, 17-18. Plaintiff also asserts that the ALJ failed to address the combined effect of her obesity on her other impairments. Defendant argues that the limiting effects of obesity need to be established by substantial evidence, which is not contained in the record. ECF No. 17, 17-18.

The ALJ found that plaintiff was obese and presented substantial evidence – plaintiff's activities of daily living and Dr. Vesali's opinion indicating no nonexertional limitations – in finding that her obesity does not significantly impact her other impairments. Plaintiff has provided no evidence to the contrary. The fact that she had gastric bypass surgery merely affirms that she was obese, but does not provide substantial evidence that her obesity adversely impacts her functional limitations. Also, the fact that Dr. Vesali assigned no limitations to plaintiff after her surgery indicates that neither her obesity nor the surgery impacts her ability to function. Thus, there is substantial evidence supporting the ALJ's finding and plaintiff's contention that the

1    ALJ failed to analyze or properly analyze the limiting effects of her obesity is without merit.

2                          2.  Sleep Apnea

3           At the hearing, plaintiff testified that she has sleeping problems.  AT 403-05.  On

4    September 29, 2009, plaintiff was diagnosed with moderate obstructive sleep apnea.  AT 382.

5    Plaintiff argues that the ALJ did not meaningfully discuss the diagnosis although the plaintiff

6    testified that her exhaustion and sleepiness make it hard to function.  Defendant argues that a

7    diagnosis alone does not establish the severity of a condition or its limiting effects.  Again,

8    plaintiff provides no objective evidence of limitations caused by her sleep apnea outside of her

9    own testimony, which was assessed by the ALJ.  The ALJ found plaintiff's allegations to be not

10   credible, a decision he supported by discussing plaintiff's activities of daily living and Dr.

11   Vesali's findings, which were also made after plaintiff's moderate obstructive sleep apnea

12   diagnosis.  These aspects of the record discussed by the ALJ constitute substantial evidence

13   supporting the finding.  Again, plaintiff's contention that the ALJ failed to analyze or properly

14   analyze the limiting effects of her sleep apnea is without merit.

15                         3.  Moderate Impairment of Concentration, Persistence, and Pace

16          At step three, the ALJ found that plaintiff has moderate difficulties in maintaining

17   concentration, persistence, or pace.  AT 18.  Plaintiff argues that this limitation should have been

18   discussed in the ALJ's RFC assessment.  The plaintiff also asserts that the ALJ's opinion is

19   internally inconsistent because the ALJ found that plaintiff does not suffer from a severe mental

20   impairment.  Defendant argues that the ALJ's findings in applying the special technique do not

21   warrant any particular limitations in the RFC assessment.  Defendant also points out that the ALJ

22   assessed the medical opinions which indicate no mental restrictions.

23          The ALJ's findings are not inconsistent as claimed by plaintiff.  The findings with respect

24   to "moderate" deficiencies as set forth in the body of the decision were conducted in the context

25   of the general evaluation of mental impairment required under 20 C.F.R. § 416.920a(c).  See SSR

26   96-8p (limitations identified under paragraph "B" criteria are not residual functional capacity

27   assessment).  In assessing plaintiff's RFC, the ALJ discussed the opinion of psychiatrist Dr.

28   Manolito Castillo, in which it was found that plaintiff had no significant mental limitations.  AT

20. Thus, the ALJ properly assessed plaintiff's mental limitations and his finding was based on substantial evidence.

### C. Medical Opinions

Plaintiff contends the ALJ committed error in failing to accord the appropriate weight to treating physician Dr. Aitken's opinion. ECF No. 16-1, 19. Plaintiff also asserts that the ALJ failed to explain his reasons for not crediting the opinion of state agency medical consultant Dr. Glaser.[2] Id. at 14. The weight given to medical opinions depends, in part, on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a

---

[2] Plaintiff asserts that "the ALJ failed to discuss or explain his reasons for not crediting the opinions of multiple state agency medical experts." ECF No. 16-1, 15. However, plaintiff only discusses Dr. Glasser's March 13, 2008 opinion, which was stamped as "affirmed as written" by Dr. Ian Ocrant on October 29, 2008. Id.; AT 216. This affirmation does not constitute a separate opinion, but instead may serve to validate the underlying opinion.

non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Dr. Aitken

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for failing to credit Dr. Aitken's March 9, 2007 opinion. ECF No. 16-1, 19; AT 157. In this opinion, Dr. Aitken noted that plaintiff should be placed on work restrictions of no lifting, is required the ability to get up and stretch for 15 minutes, and could not stand for longer than 30 minutes. Id. The ALJ assigned little weight to this opinion because it was "rendered almost 9 months prior to the alleged onset date," is not substantiated by clinical findings or diagnostic studies of record, and is inconsistent with the findings of Dr. Vesali. AT 20.

Plaintiff correctly points out that the ALJ erred in stating that Dr. Aitken's opinion was rendered nine months prior to the alleged onset date, which is September 1, 2006. Defendant argues that this error is harmless because for SSI claims the relevant time period is during the adjudicative period, which is after the application date. Also, defendant asserts that plaintiff was still working temporarily when Dr. Aitken issued her opinion, which tends to show that both plaintiff and Dr. Aitken believed plaintiff could work with restrictions at that time. Moreover, defendant argues that there is no evidence that Dr. Aitken's limitations would have been expected to last, unmodified, for the mandatory 12 month period because plaintiff's motor vehicle accident was in January 2007, three months before Dr. Aitken's opinion. These points were not relied on by the ALJ, and thus are immaterial to whether the ALJ properly rejected Dr. Aitken's opinion.

Defendant's primary arguments regarding this issue are that Dr. Aitken's opinion is not supported by the record, including her own treatment notes, and that the ALJ properly relied on the Dr. Vesali's opinion.

Defendant points out that plaintiff failed to cite to any medical evidence consistent with Dr. Aitken's assessment. Moreover, defendant notes that there were no subsequent records from Dr. Aitken or any other physician at Golden Valley Health Center indicating that plaintiff had difficulty with walking or standing. In response, plaintiff merely states that "Dr. Aitkens' (sic) records were extremely detailed and are contained throughout the administrative record," but

plaintiff fails to show any evidence in the administrative record supporting the limitations given by Dr. Aitken in the opinion plaintiff seeks to be credited. ECF No. 18, 9.

Defendant also argues that the ALJ permissibly relied on Dr. Vesali's May 28, 2010 opinion. Defendant asserts that Dr. Vesali's findings constitute substantial evidence on which the ALJ may rely because they are based on objective medical evidence that Dr. Aitken did not consider. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Plaintiff merely argues that the ALJ's rationale in discrediting the opinion of a long-time treating doctor in favor of a one-time examining doctor is inadequate and does not constitute a specific and legitimate reason.

This Court agrees with defendant that the ALJ's misstatement regarding the alleged onset date is harmless to the issue of whether the ALJ failed to accord the appropriate weight to Dr. Aitken's opinion. What is relevant, however, is that the ALJ found that Dr. Aitken's opinion is not supported by the record and is contradicted by Dr. Vesali's opinion, which constitutes substantial evidence. These qualify as specific and legitimate reasons that are supported by substantial evidence, and thus the ALJ did not error in assessing Dr. Aitken's opinion.

        2. Dr. Glaser

Plaintiff argues that the ALJ erred by failing to address and explain his reasons for not crediting Dr. Glaser's opinion. In this March 13, 2008 opinion, Dr. Glaser noted that plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8 hour workday, and push and/or pull without limitations other than those for lifting and carrying. AT 210. Dr. Glaser also noted that plaintiff could frequently climb ramps, climb stairs, balance, kneel, and crawl while occasionally climb ladders, climb ropes, climb scaffolds, stoop, and crouch. AT 211. Lastly, Dr. Glaser noted that plaintiff was limited in her ability to reach in all directions, including overhead. AT 212.

Defendant claims that any error resulting from the ALJ's failure to specifically cite to Dr. Glaser's opinion was harmless. Defendant asserts that the occasional stooping limitation, if credited, would leave plaintiff's sedentary and light occupational base virtually intact. As for the alleged overhead reaching limitation, defendant asserts that plaintiff cites no authority indicating

that such limitation would be sufficiently severe to preclude applications of the grids. Plaintiff argues that these limitations would limit plaintiff's ability to perform the full range of medium work and that vocational testimony would have been required had the ALJ included these limitations in plaintiff's RFC.

The issue of whether or not the ALJ's failure to specifically cite to Dr. Glaser's opinion was harmless turns on whether or not the opinion would have impacted the ALJ's ultimate disability determination. Thus, it must be determined whether crediting the limitations in Dr. Glaser's opinion would alter the ALJ's alternative finding at step five that, based on the grids, there would be work plaintiff could perform.

The grids categorize jobs by their physical-exertional requirements (e.g., sedentary, light and medium) and present various combinations of factors the ALJ must consider in determining the availability of work that the claimant can perform. See 20 C.F.R. pt. 404, subpt. P, App. 2; see generally Desrosiers v. Sec. of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include the claimant's RFC, age, education, and work experience. Id. For each combination, the grids direct a finding of either "disabled" or "not disabled." Id.

Because the grids are merely an administrative tool to resolve individual claims that fall into standardized patterns, there are limits on when the ALJ may rely on them. "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." See Jones, 760 F.2d at 998, Desrosiers, 846 F.2d at 578; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may also rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if the nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[3] Bates v. Sullivan, 894 F.2d 1059,

---

[3]   Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Nonexertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability

11

1063 (9th Cir. 1990), overruled on other grounds, Bunnell, 947 F.2d at 345-47; Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (requiring significant nonexertional impairments in order to depart from the grids); Penny v. Sullivan, 2 F.3d 953, 958-59 (9th Cir. 1993) (only severe limitations on the claimant's functional capacities in ways not contemplated by the grids requires vocational expert testimony).  In borderline cases, the ALJ must not apply the grids mechanically.  Jones, 760 F.2d at 998.

Defendant argues that Dr. Glaser's limitations are neither significant nor sufficiently severe to preclude application of the grids.  Defendant is correct in contending that plaintiff's light and sedentary work bases would not be significantly affected by the non-exertional stooping limitation in Dr. Glaser's opinion.  See SSR 83-14 (most light work "implies that the worker is able to do occasional bending of the stooping type); see also SSR 85-15 (the sedentary and light occupational base is virtually intact when a person can occasionally stoop in order to lift objects).  Also, while SSR 83-10 and 83-14 hold that light work typically requires the use of arms and hands to grasp, hold, and turn objects, these rulings do not state that restrictions on occasional overhead reaching would impact a person's occupational base.

Because the limitations contained in Dr. Glaser's opinion do not significantly affect plaintiff's light or sedentary occupational base they are not sufficient to preclude application of the grids, requiring vocational expert testimony.  Therefore, any error resulting from the ALJ's failure to specifically cite to Dr. Glaser's opinion was harmless.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)).  Also, because the ALJ's alternative finding at step five is upheld, the ALJ's failure to support his decision that plaintiff has past relevant work with substantial evidence is harmless as it does not affect the ultimate nondisability determination.

---

to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted; and,

3. Judgment is entered for the Commissioner.

Dated:  January 16, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

33/4 mont2825.ss